The Court now calls 115308, People of the State of Illinois v. David K. Elliott. The party is ready to proceed. Proceed. May it please the Court, Counsel. My name is Assistant Attorney General Josh Schneider on behalf of the people of the State of Illinois, and we respectfully ask that this Court reverse the judgment of the appellate court holding that a motorist who drives while his license is suspended pursuant to Section 501.1 may not be convicted of driving on a suspended license. The law has always been that one cannot violate the order of a court or an authorized government agency simply because one disagrees with that order. One cannot ignore a temporary restraining order because one thinks that it was entered in error. One cannot resist an arrest because one thinks that the arresting officer lacked a probable cause. One cannot practice law after disembarment because one is sure that it will get sorted out on a petition for rehearing. And one cannot drive on a suspended license just because one believes that the suspension was imposed in error. Here, the defendant was given notice that his license would be suspended as of October 11, 2009. October 11 came and went without that changing. His license was suspended as of October 11. Two days later, on October 13, he drove. If you had asked the defendant on October 13, is your license suspended, the answer would have had to be yes. And that answer is the only answer that matters for the criminal driving while suspended statute. The statute prohibits driving, quote, at the time, end quote, that one's license is suspended. On October 13, at that time, his license was suspended. The fact that subsequently it was determined that that suspension was mistakenly imposed doesn't change the fact that he ignored a suspension that was in effect at the time. And the criminal sanction for driving while suspended is not, does not depend on the propriety of the initial suspension or one's defiance of that suspension. And that is for good reason beyond the broad policy reason that we do not encourage self-help and encourage following the law. There's also the policy reason that the purpose of the suspension in the first place is to keep drunk drivers off the road and provide the public with protection from this dangerous class of drivers. In recognition of the fact that the criminal process is necessarily deliberately paced, the legislature sought to provide a shorter term immediate protection in the form of this statutory summary suspension, which is a civil remedial sanction, which takes drivers off the road much more quickly within 46 days, on the 46th day, rather, from the notice. And there's simply no way to keep drivers off the road with a remedial civil sanction if that sanction has no teeth. If subsequently getting that suspension rescinded means that one cannot be prosecuted for violating the suspension, then there's no reason to observe the suspension at all. As long as one is confident that it will be suspended eventually, there's no deterrent effect whatsoever. It also creates the rather absurd result that one simply cannot know whether one's license is suspended if rescission orders have retroactive effect. If one is suspended at time 1 or one is informed that one's license is suspended as of time 1 and one drives, one might think that one is driving in violation of that suspension. However, if subsequently the court rescinds that suspension, it turns out that one's license was not suspended at time 1. You could drive freely. And if at the conclusion of the appellate process it turns out that the rescission order was improper and that rescission order was vacated, then you were suspended after all. Which means that ultimately whether you're suspended depends on whether you're feeling lucky. And people would submit that this is an absurd result. A construction of the statute that turns Dirty Harry's question into valid legal advice is or should be disfavored. Mr. Schneider, how do you address defendant's argument that the definition for rescind that should be used is found in the Illinois Administrative Code, that definition in part saying to annul or void, if we take that, use that definition or position if it's void or annulled, it was if it never occurred. How do you address that? I know you don't agree that that's the definition, but do you have an argument past that? We don't agree. Past that, we would argue that that is the definition in the Administrative Code for administrative purposes. If the circuit court rescinds a suspension, it notifies the Secretary of State. The Secretary of State then takes that suspension off of the motorist's driving record so that he wouldn't have repeat offender complications for having prior suspensions or the length of the suspension, for example, changes their prior suspensions. This was addressed in the people of the T. Chanowsky. But the administrative definition should be limited to the administrative context. And the broader question of whether one can ignore a suspension imposed by the Secretary of State, the agency authorized to impose that suspension, is really entirely separate from whether the suspension was properly imposed. And here we point to the analogous situations of whether one can resist an arrest because the arrest is improper, even though the arresting officer is authorized to make that arrest, or whether one can escape from jail, even though the charges for which one is in jail are ultimately found to be unfounded. There is a serious interest in having people follow the orders of authorized State officers. The fact that the statutory system provides a remedy and a procedure for challenging those suspensions, even before they go into effect in many cases, although we can see that there will be some cases when one will not be able to get a review of a suspension before it goes into effect, indicates that the legislature intended for those suspensions to be effective until such time as they're lifted, as this Court described the process in McClure. We also point to the United States Supreme Court's analysis in Lewis, where the Court addressed a statute that prohibited felons from owning a firearm. In that case, the Court said it makes sense. The legislature has determined this is a class of people who represent a danger to the public, and they should not be permitted to have firearms. And the fact that the conviction in Lewis was found to be constitutionally infirm does not mean that the defendant in that case was able to possess a firearm without first addressing the disability of the conviction. The same reasoning holds here. The defendant should not be permitted to drive when there is an opportunity for him to address the disability, the suspension, that prohibits him from driving. To do so would prevent these suspensions from being an effective tool of legislative intent. The purpose of this entire system is to keep drunk drivers off the road. And it will be that there are cases where the suspected drunk driver was not drunk or where the suspension was improperly imposed for lack of reasonable cause to pull him over, but he was drunk and he subsequently convicted at the DUI. But the purpose is to keep drunk drivers off the road. And the fact that the legislature has determined that this is a sufficiently compelling interest, that it is worth occasionally having improperly imposed suspensions in effect for some period of possibly weeks, is not unreasonable or a due process violation. If there are no further questions, Your Honor, we would ask for reasons in our brief and those articulated here. This Court reversed the ruling of the appellate court. Thank you. Thank you. May it please the Court, Edward Unsel on behalf of David Elliott. David Elliott is not one of the drunk drivers that counsel has stated three times to you here that the legislature wants to keep off the road. David Elliott was, record would show, was driving down the road minding his own business and was erroneously stopped by a state police officer and subsequently found by Judge Grace, a duly elected circuit judge, sworn by this honorable court, that the stop should have never taken place. It should have never occurred. Mr. Elliott was arrested, had to postpone, his car was towed. He appeared in the paper as being charged. He did suffer. He did suffer. And if you want to distinguish this, and I would urge that this Court not distinguish this between Fosha and Sienczewski, I think both those were improper analysis. And I'll get to that. But Elliott's situation is different in that if you read Fosha and if you read Sienczewski, in both those cases, both courts indicated diligence. In Fosha, she waited eight months before she filed her petition to rescind. Sienczewski, there was an argument, factual argument in Sienczewski. The record, it seems to indicate that Sienczewski did not file his until after his second offense. But there's a footnote in Sienczewski that says that he may have filed it four days before that. But still, it was inappropriate. Perhaps you would want to hear about that. I wrote the case. I know. I know. A very eloquent decision. We wouldn't expect you to say anything less. No, I know. I know. But in that, I would point out in that decision, Justice Steeves makes a very interesting statement. She says in there that even in an erroneous summary suspension situation, the defendant must act and must file to annul. I looked at that and I thought, well, annul. Well, so she used the word annul as a synonym for rescind. And that's fine. That's fine. And it was even, there was a cite there too, a divorce case that dealt with annulment. But let's take a look at the word rescind. I mean, the legislature, this, I have the unfortunate of being around since the 70s. And back in the 70s when we filed our petitions to rescind, it stayed. It stayed, everything. So in 86, everybody came to the table, they met, and the legislation that we're under now was promulgated. And in that legislation, it does say that it does not stay the proceedings. But that's, in that same meeting, in that same decision of entities, the Secretary of State was present. And they chose to use this word rescind. And so why do we, as counsel suggested in his brief, why do we take a known principle of a term of art? All of us, this is Steve Court, counsel, Mr. Ramsey, all of us have one very similar experience. We all went to law school. And the core curriculum of all of our law school was 1L contracts. And in that, it was pounded into all of us the doctrine of rescission and rescind. You know, it stems from back when our only mode of transportation was horses and carriages and ships at sea. Dealing with the East India Corporation. And you had these contracts. And either through a problem with the contract, from either mistake or fraud, you had this theory, this principle of law. Counsel, why should we import a contracts term into a criminal proceeding? Because that term was chosen. It was chosen by the legislature, that's why. And you must give it the meaning that it imports. You can't dilute it. You can't. There are a number of definitions of rescind, though, aren't there? There's not. It is said that that is. Counsel cites a perfect example. Counsel cites the Sukumana case in Redactors. And it does say, well, rescind doesn't mean that a contract didn't exist. But you have to read it further. It says, but not only does it extinguish the contract, but it is restorative. Rescind is restorative. And it is to put the parties back to the status quo, to put them back. So if you choose not to use it, then fine. I think that that's an inappropriate analysis because it's not a word that can be chosen to be used or to be diluted. Mr. Unsel? Yes, ma'am. Even though your client was very diligent in filing the petition for rescind, if we were to rule in your favor, however, should rescind still be given a retroactive effect when a defendant waits months to file a petition? And where and how do we draw the line? You don't. You don't draw the line. You apply the word rescind, and that means exactly what it is. You let the legislature draw the line. They chose to use this term of law. I understand. And you're only talking about a very, very small amount of people. But I think that if you rule in our favor, if you don't rule in our favor, then let's look at the other. You say, no, we're going to go against. We're going to believe that a contractual term that has 200 years of history and the concept is recognized by a number of jurisdictions, we're going to say, so what? It doesn't apply here. People that did this really didn't know what rescind meant. They meant cancellation or they meant termination. It was like when I was married. It's not ñ I understand what I said, but it's not what I meant. Let's say that we take that. Then in Mr. Elliott's situation or in the situation where you have someone that stretches Supreme Court Rule 504 to its limits, they wait for 60 days, so they've went two weeks into their suspension. Let's say it's rescinded. So what are we going to do about those days that they were suspended? Mr. Aronson, you glossed over it pretty quickly, but what are we to do with 2-118-1B? When someone abuses it. Well, then let's look. A pending hearing on a petition to rescind shall not stay the effect of a suspension, right? Right. So wouldn't that appear that it would only be prospective and not retroactive if the rescission is granted? No, I don't read it that way. I think that ñ and it did stay. Prior to 1986, it did. It did. And I'm sorry, I've looked for the floor notes for the arguments when this came in. I can't find them. I don't know anybody else that has. So I don't really know what the discussion was on why they took that out, but I don't think that they meant it to mean that it's prospective. I think that what they meant, if you make it prospective, then what do you do about those time periods? What do you do about those days? And moreover, where is the logic from counsel? So he says, well, in Elliot's situation, Elliot was found, his driver's license was suspended October the 11th. He got a hearing on the 19th. Judge Grace specifically said in open court the suspensions were rescinded. And I know we keep going back to the particular facts of this case, and that's what you're most familiar with. Let me finish. Sure. And I know they're important, but a ruling for this court won't only talk about Mr. Elliot. No. It will be whether there's prospective or retroactive application when there's a rescission, right? I mean, that's going to be the import of the decision here, whether it's Mr. Elliot, whether it's Mr. Fosha, whatever the other case that went the other way that actually cited that provision of the code. I mean, that's the import of what we're going to do. It's going to affect future cases, right? The policy that you make, absolutely, sir. And if you take a look at Fosha, it was the second judge, Judge Light, said exactly what you said. He reaffirmed the majority's opinion, and then he went on to say, he reaffirmed it by saying, how can we do this? You must be diligent. And in the last part of his concurrent opinion, he says, there's going to be a lot of fact situations here, and I urge the legislature to address it. And this is in 1997. Sixteen years ago, they didn't address it. So you had a judge sitting there. He knew rescission meant rescission. You can tell me. And Justice Holdridge, who wrote the dissent, was perfectly correct, as was the trial judge in Fosha. Judge Holdridge says, rescind is rescind. So you've got, then this is the first decision, and this is the decision that all of these other cases came by. Particularly, let's look at it from this way. Counsel, in his original argument, in the brief, states that this case of Elliott, that the Fifth District deviated from the other two districts. And I realize the Fifth District deviates sometimes, but in this particular case, they're correct. But he says, it also goes against the Idle case. I ask you to read that. The Idle case doesn't hold that it's prospective. The Idle case just repeats Fosha. It says, well, at least the word rescind is prospective, meaning as it does the summary suspension. But the Idle case deals with the word vacate, vacature. And they go into a perfect analysis as to when the court vacates this ruling on a summary suspension, then ipso facto, automatically, you don't need anything else. You don't need further act by the Secretary of State to do anything. And the Idle case was, at trial level, successfully tried by my co-counsel, Mr. Ramsell. And unfortunately to him, the appellate court, I think, appropriately ruled. They said when you had vacature, when you used that word, it went through the definition. And I'm sorry, but that's what happens. Well, it's the same way here. When you have a rescind, when you use the terminology rescind, you not only void the contract, but you must restore the parties to the position they were in prior to the contract. Counsel, if we accept your argument and rule as you would like us to rule, counsel in the future advising a client who has a summary suspension and files a petition to rescind that, do you advise him to drive? Absolutely not. Absolutely not. No. You do it in your own peril. No. Is he suspended between the time, the statutory time and the time he has the hearing? If the circumstances are, and that's only going to be a small set of circumstances, but in your fact situation, if the setting of your suspension here, if you're diligent and you file it, but if you have to go with the, and most of these are written on the Uniform Citation Act, and if you do go the 60 days, you've got the two weeks. And if he tells me what do I do in the two weeks, I absolutely tell him don't drive because you may lose. Let's look at Sienczowski and look at FOSHA. In FOSHA, it was an agreed order. But under your fact situation, you could tell the client, well, you'd have to take your chances. If we get it rescinded, you're home free. If you don't, you're in trouble. Absolutely. The same way in contract law where you have corporations that under a, they know that with this contract, this is a fraud or the other element, this is a mistake. This is a mistake. They don't stop doing business. They do business at their own peril until such time as a court. Well, you're making a point. You believe it's more likely that your client's going to drive based on that scenario, right? No. No, I don't. He comes to you and you tell him if we get this rescinded and if you're stopped during this period of time, don't worry about it because the law is you're not going to get driving. Oh, if, if, absolutely. Yes, sir. If, if that happens. So under that scenario, is he more likely to drive if it's retroactive or is it more likely to drive if it's prospective in that situation? Because unlike your client who you said was not driving under the influence, some are. Right. Okay. Under your situation, if he takes the chance and if he determines that police officer had absolutely no reason, if he computes those events because that's all the summary suspension is, you're going back to that day and you're determining that time frame. If he says, as counsel suggests, I'm feeling lucky, then fine. Then he's going to suffer the consequences. And if we subsequently do prevail, then he doesn't. But in answer to your question, is he more likely, that's an individual choice. I mean, I don't, I don't know. I'm a risk taker, so probably if it were me in that shoes, I probably would. My ex-wife was not a risk taker and I guarantee you she wouldn't have drove under any circumstances. So I say you're dilemma, but here's where the problem stems. I mean, the problem stems from the choice. We shouldn't give you a breathalyzer right now, should we? No, I don't drink. I'm on record as never drinking, believe me. I mean, that's just, that's the chance that they take. I think you're, look, we are, all of us, we're a profession, jurisprudence. We're custodians of language. And we, and you joke around, and I apologize, but that's just my nature. We are guardians of this language, and they chose this word. They chose this term of art, this principle. They used the word resign. And if you, in counsel's analogies, he used resisting arrest. He used the Lewis case. That case I am familiar with. Mr. Lewis was in Florida and he broke in, he had charged with a class four breaking and entering. He went in and got a pop. And he was not represented by counsel, found him guilty of this very, very low class felony, and he went along through the years, and then he got possessed of weapon. Well, subsequent to that, we had Gideon v. Rainwright that said you had to have counsel. You didn't have counsel, it wasn't very good. He never attacked it. He never collaterally attacked that. So it's a different fact situation. On the resisting arrest, I do take issue with him. On a resisting arrest, if it is an otherwise lawful arrest, then you're right. Because of a well-ordered society, a well-ordered society that acknowledges language and their meanings, you go along with the flow. You don't. But let's say you have a police officer, a rogue cop that uses his authority a little too much. Well, there's lots of cases. Called 1983 cases. Yes, you can resist. You can do that. And in this situation, let's take two people driving. They're both driving. They're doing the exact same thing as Mr. Elliott. They're there. They're driving. Mr. Elliott's license is suspended. The other person doing the exact same behavior as Mr. Elliott is not suspended. Mr. Elliott is charged. But what is the difference? The difference is that the government agency that allowed Mr. Elliott to drive, the Secretary of State, subsequently made a decision that the initial decision to suspend his license was wrong, and they entered this order of rescission. So then that makes his behavior at that time appropriate. You can never make the behavior of the person resisting arrest appropriate. And in the other analogies, that's the difference here is this agency, that is what governs this behavior. And this agency acknowledges our legal principle of rescission. Mr. Unsel, let me ask you this. When the petition to rescind is allowed, other than the benefit for the argument you're trying to make here, where somebody was charged with driving while suspended, let's say that didn't happen, what other than the cleanup of the driving abstract occurs? What else is the benefit of a rescission besides removing that? Just a simple question. Is there any other benefit? Of the court, of the trial court ruling it? Yes, absolutely. No, any other benefit to the driver besides removing that from the record? I just want to look at it from a different vantage point. Okay, well, I'm having trouble understanding. Yes, there is a benefit because the benefit is the court has ruled that there's no probable cause for the stop, and it's like a fruit of the poisonous tree. They've ruled this should never have happened. So everything else that flows from that is suppressed. So, I mean, that's the benefit. But is there any other benefit? I mean, driver's license benefits from being rescinded. Yeah, the benefit is if should you get another one, which maybe David K. Elliot may, I don't know, but should that occur, then yes, then he's a first offender. He is a first offender. So there's not a cumulative effect. And it would impact the suspension time. Yes, sir. Right. Thank you. Thank you very much. Thank you, counsel. Any other questions? May it please the Court briefly. It is true that rescind is a term of art, and it's a contract term of art. And so is consideration. But life would be a lot more confusing if consideration meant in the criminal context what it means in contract. If a court was required to give consideration to a bunch of different factors, it's not clear exactly what that would mean if one was using the contractual term of art consideration. And the same obtains here for rescind. The benefit of the prospective reading of rescind is it provides us with a rule you can follow. If your license is suspended, you know that you can't drive until such time as the license is no longer rescinded or is no longer suspended by a rescission order. That's likely one of the reasons this Court, in explaining how this scheme works, used the word lift as a synonym for rescind. And equally importantly, drivers can follow it. They know that their license is suspended when they're told your license is suspended. A defendant in this case was told his license is suspended as of October 11th. With a prospective reading, he then knows that's correct. My license is suspended as of October 11th until such time as I get that suspension rescinded. The retroactive reading doesn't give you a rule you can apply. You're told your license is suspended as of October 11th. And it may or may not be suspended depending on some future event, the outcome of a future process. And as counsel pointed out, EIDL shows that that process isn't simply the rescission hearing. It may be subsequent appellate proceedings. Finally, counsel mentioned that if one is feeling lucky, then he suffers the consequences if he picked wrong. If he was told you're suspended, but there's a possibility that it's not suspended depending on the outcome of the future hearing. If he's feeling lucky and he guesses wrong, then he suffers the consequences. We would submit that it's the public that suffers the consequences, the consequences of having a suspected drunk driver on the road. And that's the whole purpose of this scheme is to keep this class of drivers off the road until such time as the suspension can be judicially ratified or rescinded. Mr. Schneider? Yes. The only problem I have with that argument, when you say the public benefit to keep drivers off the road, the way the suspension works as I understand it is the suspension takes effect 46 days after the arrest. Correct? That's correct. So the first 45 days, the person that you want to keep off the road immediately following the DUI charge is still lawfully allowed to drive. Correct? That's true. So how does that work with your argument? Well, the legislature decided because driving privileges are a property right, and the defendants have due process rights. You can't simply strip those privileges while they're proceeding. The legislature had to balance the protection for the public against the defendants' due process rights, and this is the balance they reached. I mean, certainly one could argue if we had it go into effect 15 days later, that would be more protection but less opportunity to challenge, or 30 days. But all of that sort of balancing is the legislature's endeavor, and they conducted it, and this is what they arrived at. May I ask you the same question I asked Mr. Onsel, is other than this scenario, if we didn't have the driving while suspended, when a rescission is allowed, what benefit is there to the driver beyond apparently now two things. One, they don't have the problem with a future second suspension that would second driving while suspended, or the cleaning up the abstract. Is there another benefit to look at this from whether it's prospective or retroactive? I can't think of one. If someone has a statutory summary suspension imposed and is subsequently found to have been improperly imposed, then that suspension goes off the record. If it's retroactive, it still goes off the record. A prospective or retroactive reading, either way, the person will no longer have that suspension on their record as far as the Secretary of State is concerned. The question is really the separate inquiry of what happens if you violate the suspension before you get it removed from your record, in the same way that you can have a resisting arrest conviction without any other criminal record at all, or an escape conviction without any other conviction. It's really a separate charge. It's a separate procedure. Counsel raised 1983 cases, and that's, I think, relevant, that there is a civil inquiry into the propriety of an officer's actions, for example, and there's the criminal consequences of resisting those actions as they're being carried out. And you can't resist arrest, even though the officer may subsequently have opened the door for a 1983 civil remedy. The same would hold here. There may be civil remedies if officers are maliciously pulling people over and picking on them, or there's malicious prosecution, that sort of thing, but that doesn't excuse ignoring the order of the Secretary of State, an order that the Secretary of State is authorized to give. So for those reasons, we ask that the Court reverse the appellate court. Thank you. Case number 115308, People v. David K. Elliott, will be taken under advisement as agenda number two. Thank you, Counsel, Mr. Schneider, and Mr. Renzel, for your argument. You're excused at this time.